PETER McGINNISS *against* THE MAYOR, ALDERMEN, AND COM-
MONALTY OF THE CITY OF NEW YORK.

(Decided April 3d, 1876.)

Where a public officer—*e. g.*, a police justice in the city of New York—is paid in-
stallments of his salary at regular stated intervals, each payment being in full
for what is due or supposed to be due him for a certain term, this does not open
a running account between him and the corporation by which he is paid, and
if he is paid more than is due him, through a mistake as to the law fixing his
salary, such over-payment cannot be proved in an action by him for salary sub-
sequently accruing, under a plea of *payment.*

*It seems,* however, that where such payments are made by the disbursing agent
of a municipal corporation, in excess of his authority, and without authority of
law, they may be recovered back from the party to whom they have been paid,
although no fraud is imputed to the recipient.

*It seems* that such a recovery could be had where the money was paid out in ac-
cordance with a resolution of the common council of the city, which was after-
wards held to be void.

Where such over-payments had been proved under a plea of payment, and judg-
ment rendered against the defendant, the court refused on appeal to allow the
pleadings to be amended to conform to the proof in order to reverse the judg-
ment, on the ground that such amendments ought to be allowed only in support
of judgments, and not for the purpose of reversing them.

APPEAL by defendant from a judgment of this court entered
on the decision of Judge LOEW, after a trial before him without
a jury.

The facts are fully stated in the opinion.

VAN HOESEN, J.—The plaintiff is the assignee of John Mc-
Quade, who was a police justice in the city of New York from
the first day of January, 1870, till the fourth day of November,
1873. The plaintiff claims that McQuade's salary was $10,000
per year during the entire period of his term of office. The
defendants insist that his salary was never more than $5,000 per
year. McQuade was paid at the rate of $10,000 per year from
his entrance into office, till the first of September, 1871. For
the whole period embraced between the first of September, 1871,

and the 4th day of September, 1873, when he ceased to be a police justice, he received no more than $5,416 66. The plaintiff, as assignee of McQuade, sues the corporation of New York, giving credit for the $5,416 66, and claiming the rest of the amount which would be coming to McQuade, if the salary of latter between the 1st of September, 1871, and the 4th of November, 1873, were $10,000 per annum. The city, in its answer, alleges that McQuade's salary was only $5,000 per year, and pleads that he has been paid in full.

Upon the trial, it was admitted that McQuade's right to an annual salary of $10.000 was founded upon a resolution of the common council of the city of New York, which went into effect on the 31st day of December, 1869. Prior to the adoption of that resolution, the salary of police justices was $5,000 per year. If that resolution be invalid, the utmost which the assignee could recover is the unpaid salary of McQuade, at the rate of $5,000 per annum. The judge, at the trial, adopting the view that the annual salary was never more than $5,000, found the sum of $6,756 14 to be the amount due to the plaintiff for his assignor's salary between September 1st, 1871, and November 4th, 1873, and directed judgment to be entered accordingly.

The principal contention, at the trial and on the argument of the appeal, was as to whether the defendants could protect themselves against the plaintiff's claim, by applying in payment of it, the moneys in excess of $5,000 per year, which they had paid McQuade between January 1st, 1870, and September 1st, 1871. Between those dates they had paid McQuade $8,333 more than he was entitled to receive, if his salary were only $5,000. The plaintiff contended that, conceding McQuade's salary to have been no more than $5,000 per year, the moneys paid in excess of that rate were paid voluntarily; not under a mistake of fact, but under the honest belief on the part of McQuade and of the city authorities that the increase of the salaries of police justices was lawful and valid, and that McQuade was entitled to $10,000 per year; and furthermore, that a voluntary payment could not be recovered back. The defendants conceded that the payment to McQuade was a voluntary payment,

and could not be recovered back by suit in which the city should be plaintiff, though they insisted that they ought to be permitted to deduct from the plaintiff's claim in this action the amount of the overpayments they had made to McQuade.

If the overpayments to McQuade were voluntary payments, they could neither be recovered back by suit, nor deducted in this action; and the judge was perfectly right in giving judgment for the plaintiff. The turning point of this case, therefore, is, whether the payments in excess of $5,000 per year were what the law calls voluntary payments. Under the decisions of the Court of Appeals, in the case of the *Supervisors of Richmond County* v. *Ellis* (59 N. Y. 620), and in the case of *The People* v. *Fields* (58 N. Y. 491), I think they were not. In *Smith* v. *The Mayor* (1 Hun, 56), the Supreme Court, in the general term of the first department, decided that the resolution of the common council, adopted December 31st, 1869, increasing the salaries of police justices from $5,000 to $10,000 per year, was an unlawful assumption of authority on the part of the common council, and absolutely void. That decision is so clear and conclusive in its reasoning, that this court ought to follow it. If there was no law or valid ordinance authorizing the payment of $10,000 per annum to each police justice, the action of the city officials in making such payments was illegal, and not binding upon the corporation. In *The People* v. *Fields* (*supra*), the court says: " The payment was made and received without any lawful power in the comptroller to make it. The defendant is chargeable with knowledge of this. It was a payment by an agent, who had no authority as such to make it. It was, then, no payment by the principal in mistake of law or ignorance of facts. The principal, in legal view, had no part in the payment, and it was made against its will. It was equivalent to an appropriation by Fields of the moneys to his own use, with the acquiescence and help of the officer of the city, who was authorized to pay them out no otherwise than in accordance with law. He having made the payment unlawfully, it was an act not within the scope of his agency, and does not bind his principal."

Again, in the *Supervisors of Richmond* v. *Ellis* (59 N. Y.

625), the court say : "It is a rule that in cases of public agents, the principal is not bound by their action, unless they act within the scope of their authority." It is said that if such agents pass beyond the scope of their limited powers, the public, their principal, is not to be injured by their unwarrantable acts. "It is better that an individual should now and then suffer by such mistakes, than to introduce a rule against the abuse of which, by improper collusion, it would be very difficult for the public to protect itself."

It is true that fraud in fact cannot be charged upon John McQuade, and that nothing was shown upon the trial to indicate that he knew or even suspected the ordinance increasing the salaries of police justices to be invalid ; but the law, as laid down in *The People* v. *Fields* (58 N. Y. 505), is, that an action may be maintained to recover back money paid without authority of law, by a city official, out of the city treasury, though fraud in fact be not imputed to the recipient of the money. The law charges upon persons receiving public moneys knowledge of the powers and authority of public auditing and disbursing officers, and compels the refunding to the treasury of moneys received from officials who exceed their authority, by making, under the forms of law, payments for which the legislature has not directly or indirectly given warrant. Such illegal payments may be sued for, or may be used by way of set-off.

The counsel for the defendants mistook the practice in attempting to avail himself of the defense of the overpayments to McQuade under the plea of payment. The payment to an officer of his salary at regular stated times does not open a running account between him and the city, so that the city may, at the pleasure of any disbursing agent for the time being, withdraw a payment made for one month, and, years afterwards perhaps, apply it to another month in a subsequent part of the officer's term. Where both parties have, at the time of payment, applied the money to a certain debt, then due or believed to be due, one of them cannot afterwards appropriate the payment to a claim not in existence, and not in the contemplation of the parties when the money was paid. Although the over-

420 COURT OF COMMON PLEAS.

McGinniss v. The Mayor, Aldermen and Commonalty of the City of New York.

payments are not available under the plea of payment, they might have been pleaded as a set-off or counterclaim.

But the counterclaim was, by stipulation, withdrawn before trial; and the defendants relied, at the trial and upon the argument of the appeal, upon the plea of payment alone. As I have said, the evidence of the defendants was not admissible under that plea. No motion was made on the trial to conform the pleadings to the facts proved, or to amend the answer. It is now too late to do either. The power of the general term to amend a pleading, or to conform the pleadings to the proof, is only exercised to support or sustain the judgment—never to reverse it (*Engless* v. *Furniss*, 3 Abb. 82; *Gasper* v. *Adams*, 24 Barb. 287; *Brown* v. *Colie*, 1 E. D. Smith, 265; *Williams* v. *Birch*, 6 Bosw. 674; *Star Steamship Co.* v. *Mitchell*, 1 Abb. Pr. N. S. 403).

For these reasons the judgment must be affirmed, with costs.

Joseph F. Daly, J.—I concur with the views expressed by Judge Van Hoesen in favor of affirming the judgment in this case. Under the sole plea of *payment* interposed by the corporation, it is not entitled to a reduction of plaintiff's recovery, or to the extinguishment of his claim for salary accruing to his assignor subsequent to September, 1871, by proof of payments to him of an amount during the years 1870 and 1871, greater than the salary fixed by law for his office of police justice.

I. The payment of money to McQuade out of the city treasury for salary as police justice was not in the course of any employment of him by the city, the relation of employer and employee not existing between them; and there could be no running account for compensation; nor was the payment made in pursuance of any contract between them which authorized the application of an overpayment as upon an installment due in payment of installments subsequently accruing As a public judicial officer he made certain claims for salary payable from the city treasury, and he received upon each claim exactly the sum he professed himself entitled to, neither more nor less. Such payments were made by the corporate officers acting

McGinniss v. The Mayor, Aldermen and Commonalty of the City of New York.

under what they supposed to be legal authority, on claims to the amount of each payment and in satisfaction of such claims, and not on account of any general unliquidated indebtedness or running contract, which, upon final settlement, or at any subsequent period, authorized them to apply as payments on the whole sum due, overpayments on particular installments by way of anticipation.

II. To recover back from McQuade, or to offset against his assignee sums paid as salary which were actually in excess of what the former was entitled to receive, the corporation must disaffirm the act of its financial officer in making such overpayment, and recover or set off the excess as moneys unlawfully and improperly received by McQuade from the treasury without any right or just claim whatever. While under a plea of *payment* the city must affirm the act of its agent, and claim the benefit of that act. Should the city affirm the act of the controller in making the overpayment, it would have to accept the consequences of such ratification, both those favorable to the plaintiff's assignor as well as those prejudicial to him ; and he would show that the whole payment by the controller to him was pursuant to a claim made by him for salary alleged to be due, and in satisfaction of such claim, and no more. Under a proper plea the city might have got the benefit of the excess paid to McQuade; but such plea, or the appropriate averments in the answer, were withdrawn at or before the trial.

CHARLES P. DALY, Ch. J., dissented on the ground that under a plea of payment the defendant could show the overpayment made by mistake.

Judgment affirmed.